No. 66,742

BRIGITTE JACKSON, *Appellant,* v. K-MART CORPORATION, *Appellee.*

(840 P.2d 463)

Opinion filed October 30, 1992.

*Henry O. Boaten,* of Law Offices of Henry O. Boaten, of Topeka, argued the cause and was on the briefs for appellant.

*Barry E. Warren,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Bradley S. Russell,* of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiff, Brigitte Jackson, brought this action against K-Mart Corporation, defendant, (K-Mart) for per-

sonal injuries sustained when she slipped and fell in the clothing section of a K-Mart store in Manhattan, Kansas.

She appealed the district court's granting of summary judgment for K-Mart on the grounds K-Mart did not have notice of the liquid spilled on the floor. The Court of Appeals reversed and remanded. *Jackson v. K-Mart Corp.*, 16 Kan. App. 2d 716, 828 P.2d 941 (1992). We granted K-Mart's petition for review.

The facts in this case are stated in the Court of Appeals opinion:

"Brigitte Jackson entered the K-Mart department store located in Manhattan, Kansas, as a business invitee for the purpose of shopping for children's clothing. While walking down an aisle in the children's clothing department, she slipped and fell near a round clothing rack. In the middle of the tile floor near the rack, there was an accumulation of a green liquid substance that was apparently avocado juice.

"Jackson did not see the spilled juice, did not know how it got there, and did not know how long it had been there. After her fall, an unidentified K-Mart employee found a partially full can of avocado juice near the spill and told Jackson that she apparently had slipped on the substance. Later, Jackson overheard an unidentified K-Mart customer say a woman had passed through the children's clothing department accompanied by a small child who was carrying a can of avocado juice. The customer surmised the child disposed of the can by placing it on the floor underneath the clothing rack.

"K-Mart operates an in-store cafeteria and allows cafeteria patrons to remove food and drink from the cafeteria area and consume it on the shopping floor. Jackson testified that K-Mart sells small cans of avocado juice in the cafeteria." 16 Kan. App. 2d at 717-18.

We have reviewed the record and, with one exception, find the Court of Appeals' statement of the facts to be accurate and in accordance with the uncontroverted facts suggested by the parties. The one exception is the statement that a K-Mart employee "found a partially full can of avocado juice near the spill." 16 Kan. App. 2d at 717. Neither party contended such a statement as an uncontroverted fact. It is uncontroverted that an unidentified K-Mart employee told Jackson that she had slipped on avocado juice. Furthermore, there appears to be no dispute that avocado juice was on the floor in the children's clothing section. K-Mart attached to its petition for review a statement from one of its employees completed more than two years after Jackson fell. The employee stated she "looked around and found a can of juice (with a Wal-Mart price tag on it) and some of it was on

the floor." This statement is not part of the record on appeal, and therefore we will not consider it in determining this appeal.

The district court, in granting summary judgment in favor of K-Mart, stated in part:

"In reviewing the evidence in the discovery record, the plaintiff has not established that K-Mart had actual notice that the spill occurred nor has the plaintiff produced evidence suggesting constructive notice based upon the length of time the spill was in existence. There is no evidence in the record to indicate how long the spill was in existence.

.  .  .  .

. "It is the general rule in Kansas that when a customer is injured as the result of a fall from a dangerous condition not created by the proprietor, but traceable to persons other than those for whom the proprietor is responsible, proof that the proprietor was negligent with respect to the floor condition requires a showing that he had actual notice thereof or that the condition existed for such a length of time that, in the exercise of ordinary care, he should have known of it.

.  .  .  .

"This Court FINDS that plaintiff has not established that the defendant had actual notice regarding this spill on the floor and further, there is no competent evidence in the record to establish that the defendant had constructive notice of this condition. Based upon the principles set forth in the cases heretofore cited, the Court concludes that the evidence is insufficient to sustain plaintiff's cause of action as a matter of law."

The Court of Appeals reversed because it adopted the mode-of-operation rule, which allows a customer injured due to a condition inherent in the way the store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition. The Court of Appeals remanded the case for determination of the factual question of whether the dangerous condition due to K-Mart's allowing customers to carry food and drink onto the shopping floor was reasonably foreseeable. If so, the additional question of whether reasonable care had been exercised needed to be determined.

The Court of Appeals acknowledged that Kansas appellate courts had not expressly adopted the mode-of-operation rule. 16 Kan. App. 2d at 721. The Court of Appeals found several Kansas cases which it considered to be not inconsistent with a theory of liability based on the proprietor's mode of operation. 16 Kan. App. 2d at 721-22 (citing *Elrod v. Walls, Inc.,* 205 Kan. 808, 473 P.2d 12 [1970], and *Little v. Butner,* 186 Kan. 75, 348 P.2d

1022 [1960]). And the Court of Appeals expressed the conviction that "the mode-of-operation rule is a natural extension of *Little* and *Elrod.*" 16 Kan. App. 2d at 724.

In her brief in the Court of Appeals, Jackson took the position that this mode-of-operation rule already was a part of Kansas slip-and-fall law. She relied primarily on *Little.*

The governing principles stated in *Little* are as follows:

"[T]he liability of a proprietor of a business is predicated upon his superior knowledge concerning dangerous conditions and his failure to warn persons present of the risk. With respect to the necessity of proof that the proprietor of a store in which the plaintiff was injured in a fall on an interior floor had notice of the dangerous condition, the cases are divided into two classes: (1) injuries to customers caused by dangerous conditions negligently created or maintained by the proprietor or his servants [citations omitted], and (2) injuries due to dangerous conditions coming about through no active fault of the proprietor and not involving an instrumentality employed by him in the conduct of his business [citations omitted]. Under the former, the condition is one which is traceable to the proprietor's own act, that is, a condition created by him or under his authority, or is one in which he is shown to have taken action, and proof of notice is unnecessary. Under the latter, where the floor has been made dangerous by the presence of an obstacle which is traceable to persons for whom the proprietor is not responsible, absent a condition created by himself, proof that the proprietor was negligent with respect to the floor condition requires a showing that he had actual notice thereof, or that the condition existed for such a length of time that in the exercise of reasonable care he should have known of it [citations omitted]." 186 Kan. at 81.

Mary Little's petition alleged that she fell while grocery shopping "because the floor was made slick and slippery by meat samples dropped on the floor after being handed out to patrons, customers and children by a demonstrator carrying on a food demonstration for Rath's meat products." 186 Kan. at 77. Little further alleged that the grocery store and Rath had an agreement by which the demonstrator was employed; that the grocery store and Rath were aware of the likelihood that meat samples or parts of them would be dropped, and that the demonstrator was aware that meat products actually were being dropped. 186 Kan. at 77-78. The district court sustained the grocery store's and Rath's demurrers to Little's petition.

On appeal Little argued that, as a business invitee in a grocery store, she was entitled to assume that the floor was safe to walk

on and that she could accomplish her shopping without injury. The grocery store and Rath contended that the "mere existence of debris on the floor where customers normally walk or are expected to walk, which was placed there by other customers, does not in and of itself constitute actionable negligence on the part of the proprietor." 186 Kan. at 81. This court was not convinced by the argument of the grocery store and Rath:

"The defendants, by their arrangement or agreement to conduct the demonstration, created a condition, the amended petition alleges, whereby they knew or should have known that patrons, customers and children of tender years would drop particles of meat on the floor causing it to become slick and slippery and creating a dangerous condition in that area of the store where the demonstration was being conducted. These allegations, which are admitted by the demurrers, clearly bring the instant case within the first class of cases making proof of notice unnecessary." 186 Kan. at 82.

This court concluded that the demurrers should not have been sustained. Several questions, including the following, were specified for determination by the trier of fact: "Whether the defendants should have reasonably anticipated that the handing out of meat samples to customers and children in the store would result in meat particles being dropped, making the floor slick, slippery and dangerous for the use of plaintiff and other customers." 186 Kan. at 82.

In the present case, Jackson argues that the dangerous condition, spilled juice on the floor, existed because K-Mart allowed customers to take food and beverages purchased at the in-store cafeteria to other parts of the store. Therefore, she argues, the dangerous condition is traceable to K-Mart, and proof of actual or constructive notice is not required.

K-Mart argues that Kansas law in this regard, before the Court of Appeals' decision in the present case, was clear and concise and it is entitled to a judgment as a matter of law. This court's decisions in *Elrod* and *Little,* however, tend to indicate otherwise.

This court has referred to two categories—transitory dangerous conditions traceable to the proprietor or its agents and transitory dangerous conditions not traceable to the proprietor or its agents. There has been considerable latitude in the proximity said to be traceable.

For the first category, proof of notice was not required. For the second, a plaintiff was required to show actual or constructive notice.

In *Little*, the transitory dangerous condition was the presence of meat samples on the store floor. Customers had dropped the meat samples. The proprietor had permitted a representative to offer meat samples to customers. Only in this attenuated sense was the slippery floor condition created by the proprietor or its agent.

This court placed *Little* in the first category. In doing so, it was taking a broader view of the concept of "creating a dangerous condition" than it had expressed in other cases. See, *e.g.*, *Magness v. Sidmans Restaurants, Inc.*, 195 Kan. 30, 402 P.2d 767 (1965) (defendant's motion for directed verdict granted where plaintiff slipped on a pickle on the floor of cafeteria).

In *Elrod*, a jury returned a verdict in favor of Audrey Elrod and against the grocery store in which she slipped and fell on some produce—lettuce and perhaps a grape—on the floor of the produce aisle. The judgment was affirmed. This court reasoned as follows:

"When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor and if the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate." 205 Kan. at 812.

This court's language in *Elrod* is strikingly similar to the following excerpt from *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 429, 221 A.2d 513 (1966):

"When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor. If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate . . . ."

The New Jersey court went on to say that it is incumbent upon the proprietor to take the reasonably necessary precautions "whether the risk arises from the act of his employee or of someone else he invites to the premises." 47 N.J. at 429.

The New Jersey court appreciated that its approach did "not square completely with the standard approach to the problem."

47 N.J. at 430. For the standard approach, the New Jersey court cited Annot., 61 A.L.R.2d 6. 47 N.J. at 430. The following statement summarizes a related annotation: "It is clear that no liability can attach to the proprietor in this situation where it is not shown that the proprietor had actual or constructive notice of the floor condition so created." Annot., 61 A.L.R.2d 110, 138. It is further stated:

> "[P]roof that the proprietor of a store or similar place of business had constructive notice that a floor within the business premises was dangerous as a result of the presence of an obstacle thereon requires proof that the floor condition existed for such a length of time that the proprietor, in the exercise of ordinary care, should have known of it." 61 A.L.R.2d at 126.

The New Jersey court departed from the familiar principle of negligence which is stated in the annotation. K-Mart characterizes the mode-of-operation analysis as an "exception" to established principles. K-Mart asserts that "only eight jurisdictions have expressly adopted the 'mode of operation' exception."

We note, however, that the modern status of the traditional principle includes "a broad trend toward liberalizing the rules restricting recovery by one injured on the premises of another." Annot., 85 A.L.R.3d 1000, 1006. Various ways in which state courts have altered the traditional rule include the following: Where a showing of constructive notice is required, its dependence on proof that the condition had existed for an extended period of time before the fall occurred may be eliminated. 85 A.L.R.3d at 1004; see *Strack v. Great Atlantic & Pacific Tea Co.*, 35 Wis. 2d 51, 150 N.W.2d 361 (1967). Another court held that where liability is alleged to arise from the proprietor's failure "to inspect, maintain, or police his premises," the plaintiff was not required to show notice of the specific transitory condition. 85 A.L.R.3d at 1005; see *Glover v. Montgomery Ward and Company*, 536 P.2d 401 (Okla. App. 1974). Other courts which have eliminated the requirement of proof of notice shift the burden of going forward once the plaintiff has shown the existence of a dangerous transitory condition and the resulting fall. 85 A.L.R.3d at 1005; see *Gonzales v. Winn-Dixie Louisiana, Inc.*, 326 So. 2d 486 (La. 1976). Another approach is to deem the proprietor has constructive notice of the specific condition from a recurring con-

dition or conduct which makes it reasonably probable that a dangerous condition will occur. 85 A.L.R.3d at 1004.

Other courts which have focused on the reasonable foreseeability of a dangerous condition occurring avoid the fiction of requiring notice. In these courts,

"the plaintiff is not required to show such notice where the circumstances are such as to create the reasonable probability that the specific transitory condition would occur, because under such circumstances there is a risk of harm that is, or should be, reasonably foreseeable to the store owner or business proprietor." 85 A.L.R. 3d at 1004.

Among the cases cited in the annotation as illustrative of this approach are the following: [*Rhodes v. El Rancho Markets*, 4 Ariz. App. 183, 418 P.2d 613 (1966); *Jasko v. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972); *F.W. Woolworth Co. v. Stokes*, 191 So. 2d 411 (Miss. 1966); *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426; and *Ciminski v. Finn Corp.*, 13 Wash. App. 815, 537 P.2d 850, *rev. denied* 86 Wash. 2d 1002 (1975). Several of these cases (or their progeny) are cited in the opinion of the Court of Appeals in the present case.

With regard to this approach, the burgeoning of the self-service method in retail marketing is cited as a significant factor in the evolution of the rule of liability.

"The self-service marketing method has achieved widespread acceptance within the relatively recent past in a variety of commercial enterprises, particularly supermarkets, discount department stores, and restaurants. While the self-service marketing method has economic advantages for the store owner or business proprietor and permits consumers the freedom to browse, examine, and select the merchandise that they desire, certain problems are inherent in the method which are infrequently encountered under traditional merchandising methods that involve individual customer assistance. For example, customers are often not as careful in handling merchandise as are employees; merchandise may be spilled, dropped, and left on the floor as a result of customer carelessness, or because customer attention is directed toward displayed merchandise and the customer is unaware of the spilled or dropped merchandise; and spilled or dropped merchandise may not immediately come to the attention of employees whose job it is to clean the spills or return the merchandise to display shelves or racks. For a recognition that the self-service marketing method is apparently one of the factors leading to the large number of falls in supermarkets, see the note 'Supermarket Liability: Problems in Proving the Slip-and-Fall Case in Florida,' at 18 U. Fla. L. Rev. 400, 455 (1965).

"It is suggested that by eliminating in certain self-service marketing situations the requirement that the plaintiff in a slip-and-fall case prove that the store owner or business proprietor had actual or constructive knowledge of the transitory condition allegedly causing the plaintiff's fall, the courts are recognizing, either explicitly or implicitly, that by utilizing the self-service marketing method the store owner or business proprietor is himself creating the dangerous condition, and that therefore the owner or proprietor is deemed to have actual notice of the condition, so that no proof of notice by the plaintiff is necessary." 85 A.L.R.3d at 1004 n.15.

This court, in *Elrod,* used language which had been penned by the New Jersey court in describing the circumstances and drawing policy reasons for removing the slip-and-fall victim's burden of proving notice. This court, however, did not eliminate the necessity of proof of notice: "We must conclude that there was sufficient evidence to go to the jury on the question of constructive notice and also on the question of whether the proprietor exercised due care in the maintenance of the produce aisle." 205 Kan. at 813. In *Elrod,* the court adhered to the rule expressed in *Little* that the victim must show either that the proprietor had actual notice of the floor condition or that it had existed long enough that the proprietor would be deemed to have notice. *Little,* 186 Kan. at 81.

In its opinion in the present case, the Court of Appeals observed that in *Elrod* this "court stopped short of adopting the mode-of-operation rule." 16 Kan. App. 2d at 721. It expressed the view that the "Kansas case most consistent with recognizing a theory of liability based on the proprietor's mode of operation is *Little.*" 16 Kan. App. 2d at 722.

It also expressed its conviction that the mode-of-operation rule is a natural extension of *Little* and *Elrod.* 16 Kan. App. 2d at 724. The Court of Appeals concluded that the rationale of the mode-of-operation cases was persuasive. We agree. In arriving at this conclusion, the Court of Appeals relied on the factually similar case of *Tom v. S.S. Kresge Co., Inc.,* 130 Ariz. 30, 633 P.2d 439 (Ct. App. 1981). There, the Arizona Court of Appeals reversed the trial court's entry of summary judgment in favor of Kresge and remanded for trial. Mae Tom slipped and fell on liquid, surmised to be a soft drink, spilled on the floor of a dry goods section of the department store. There was no evidence as to how the liquid was spilled or who spilled it. Soft drinks

were sold in the store, and their consumption was not restricted to certain areas in the store. Because customers could carry the drinks through the store, spills were "easily foreseeable." 130 Ariz. at 33.

The *Tom* decision represents an extension by the Arizona courts of the mode-of-operation rule which had been adopted, in reliance on the New Jersey case, *Wollerman,* for self-service food markets. The *Tom* court announced: "We now hold that the 'mode of operation' rule provides a basis upon which a jury could infer negligence on the part of a proprietor, such as appellee [Kresge], who sells soft drinks that patrons may carry around the premises while shopping." 130 Ariz. at 32.

In distinguishing a case in which it had declined to apply the mode-of-operation rule, the Arizona court noted that the key to its application "is the reasonable anticipation of patrons' carelessness under the circumstances." 130 Ariz. at 32.

In its opinion, the Court of Appeals quoted at length from another Arizona case, *Chiara v. Fry's Food Stores of Arizona, Inc.,* 152 Ariz. 398, 733 P.2d 283 (1987), as to the reasons for developing and adopting the mode-of-operation rule:

" 'THE MODE-OF-OPERATION RULE

" 'Courts in Arizona and in other jurisdictions have mitigated this seeming inequity by developing the "mode-of-operation" rule. The "mode-of-operation" rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise. [Citations omitted.] In other words, a third person's independent negligence is no longer the source of liability, and the plaintiff is freed from the burden of discovering and proving a third person's actions. A plaintiff's proof of a particular mode-of-operation simply substitutes for the traditional elements of a *prima facie* case—the existence of a dangerous condition and notice of a dangerous condition. This is neither a new nor radical principle. We have recognized, in other contexts, a businessman's duty to anticipate the hazardous acts of others likely to occur on his property, *e.g., Chernov v. St. Luke's Hospital Medical Center,* 123 Ariz. 521, 522-23, 601 P.2d 284, 285-86 (1979) (hospital not entitled to summary judgment when plaintiff alleged that accident in hospital parking lot was produced by hospital's improper maintenance of traffic control signals); *see also* Restatement (Second) of Torts § 344 ("A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental,

negligent, or intentionally harmful acts of third persons . . . , and by the failure of the possessor to exercise reasonable care to [protect the public]").' *Chiara,* 152 Ariz. at 400." 16 Kan. App. 2d at 723-24.

K-Mart contends that the adoption of the mode-of-operation rule would "transform such business operators into insurers of the safety of their premises." We do not agree. The mode-of-operation rule is a limited exception and does not abrogate the general rule. The limited application of the rule was addressed in *Chiara:*

"The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition." 152 Ariz. at 400-01.

A proprietor would not be liable for a dangerous condition on his premises caused by a third party absent actual or constructive notice of the condition, except where, based on the mode of operation, the proprietor could reasonably foresee that the dangerous condition would regularly occur.

K-Mart attempts to shift the focus to where the avocado juice was purchased. The application of the mode-of-operation rule is not dependent upon where the juice was purchased. K-Mart cites no authority, nor are we aware of any, that limits the application of the rule to conditions caused by a product purchased on the premises. Where the avocado juice was purchased is not relevant. The mode-of-operation rule focuses primarily on the proprietor's mode of operating the business rather than the events surrounding plaintiff's injury.

The Court of Appeals described the mode-of-operation rule as

"generally allow[ing] a plaintiff to recover without showing the proprietor's actual or constructive knowledge of the condition if the plaintiff shows the proprietor adopted a mode of operation where a patron's carelessness should be anticipated and the proprietor fails to use reasonable measures commensurate with the risk involved to discover the condition and remove it." 16 Kan. App. 2d at 723.

We agree with the Court of Appeals' reasoning and decision adopting the mode-of-operation rule. Applying this rule to the present case, two questions of fact remain to be determined:

whether K-Mart could reasonably foresee that customers would regularly spill beverages on the floor and, if so, whether K-Mart failed to exercise reasonable care under the circumstances. Thus, the granting of summary judgment was improper.

The judgment of the Court of Appeals reversing the district court and remanding for trial is affirmed. The judgment of the district court is reversed and the case is remanded for trial.

LOCKETT and ABBOTT, JJ., not participating.

ADRIAN J. ALLEN and MICHAEL J. MALONE, district judges, assigned.