5 P.3d 407

Linda GUMP, Respondent–
Plaintiff–Appellee,

v.

WAL–MART STORES, INC., a Delaware
corporation, Petitioner–Defendant–
Appellant,

and

KBRL, Inc., a Hawaiʻi corporation, John
Does 1–10, Jane Does 1–10, Doe Corpora-
tions, Partnerships, Governmental Units
or Other Entities 1–20, Defendants.

No. 21670.

Supreme Court of Hawaiʻi.

July 27, 2000.

John R. Lacy, Margaret Jenkins Leong, Normand Lezy, and Mavis M. Masaki, of Goodsill Anderson Quinn & Stifel, on the briefs, Honolulu, for petitioner-appellant.

Robert D.S. Kim, on the briefs, for respondent-appellee.

Francis Nakamoto and Steven L. Goto of Ayabe, Chong, Nishimoto Sia & Nakamura, on the briefs, Honolulu, for Amicus Curiae Hawaii Restaurant Association.

George W. Brandt and Bradford F.K. Bliss of Lyons, Brandt, Cook & Hiramatsu, on the briefs, Honolulu, for Amicus Curiae Hawaii Insurers Council.

Jay M. Fidell and Scott I. Batterman of Bendet, Fidell, Sakai & Lee, on the briefs, Honolulu, for Amicus Curiae Building Owners and Managers Association and Institute of Real Estate Management.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Judge WONG *, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Petitioner-appellant Wal–Mart Stores, Inc. (Wal–Mart) has applied to this court for a writ of certiorari to review the opinion of the Intermediate Court of Appeals (ICA) in *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 428, 5 P.3d 418 (App.1999) [hereinafter, the "ICA's opinion"], affirming the trial court's judgment in favor of the plaintiff and various orders of the trial court. Wal–Mart argues that the ICA erred in affirming the judgment and orders because: 1) the ICA should not have adopted the "mode of, operation" rule; 2) the ICA misapplied the rule by omitting certain requirements; 3) Gump did not prove that Wal–Mart failed to exercise reasonable care; 4) the settlement paid by Defendant KBRL, Inc. [hereinafter "McDonald's"] to Gump should have been set off against the amount of the jury's verdict; and 5) the trial court should have included McDonald's on the special verdict form. We hold that the ICA did not err in adopting the mode of operation rule. However, its application is limited to the circumstances of this case, wherein a commercial establishment, because of its mode of operation, has knowingly allowed the consumption of ready-to-eat food within its general shopping area. We further hold, as a matter of law, that the Mc-

---

* Acting Associate Justice Wong, was assigned by reason of the vacancy created by the resignation of Justice Klein, effective February 4, 2000. On May 19, 2000, Simeon R. Acoba, Jr. was sworn-in as associate justice of the Hawai'i Supreme Court. However, Acting Associate Justice Wong remains on the above-captioned case, unless otherwise excused or disqualified.

Donald's settlement should have been set off against the amount of the jury's verdict against Wal–Mart. Therefore, we reverse the ICA's opinion insofar as it affirmed the amount of damages entered against Wal–Mart and affirm the opinion, as modified by our analysis, in all other respects.

## I. BACKGROUND

### A. Factual and procedural background

This case arose out of an incident in which Gump slipped on a french fry outside the McDonald's restaurant but inside the premises of Wal–Mart and sustained injuries. The restaurant is located inside the Kailua–Kona Wal–Mart. The factual and procedural background is described in the ICA's opinion. We repeat only the facts relevant to the issues discussed herein.

On October 2, 1997, Wal–Mart filed a motion for summary judgment arguing, *inter alia*, that it was entitled to summary judgment on the negligence claim because it did not have notice of the fallen french fry. The trial court denied the motion.

Prior to trial, Gump reached a settlement with McDonald's, pursuant to which Gump released McDonald's in exchange for $5,000. Upon Gump's motion in liminie regarding the dismissal of McDonald's, the trial court ruled that the issue of McDonald's liability would not be raised before the jury and that McDonald's would not be included on the special verdict form. In its opposition to the motion, Wal–Mart also argued that, if the jury awarded damages to Gump, Wal–Mart was entitled to a set off in the amount of Gump's settlement with McDonald's. The trial court stated that it would not apply a set off because Wal–Mart had not filed a cross-claim against McDonald's.

The evidence adduced at trial established that McDonald's maintained a sign inside the restaurant that read, "Patrons, please do not leave these premises with food." However, Wal–Mart employees generally did not approach customers who took McDonald's food into the store unless they saw the customers "do something that would be hazardous...." According to Bryan Wall, who was the store manager at the time of the incident, Wal–Mart had one or two employees patrolling the store at any given time and looking for spills or other hazards. Wall also testified that all employees were trained to constantly look for potential hazards and that the store called periodic "zone defenses" during the day. When a zone defense was called, employees stopped what they were doing to pick up debris on the floor and clean up any spills. However, Wall was unable to specify how often the zone defenses occurred or whether or when one had been implemented prior to Gump's fall.

The jury awarded Gump $20,000 in general damages and $6,500 in special damages and apportioned liability 95% to Wal–Mart and 5% to Gump. On April 23, 1998, the trial court entered final judgment in favor of Gump, ordering Wal–Mart to pay $25,175 in damages. Wal–Mart subsequently moved for a judgment notwithstanding the verdict (JNOV), arguing that there was no evidence that it had notice of the fallen french fry or that it had breached any of its maintenance procedures. In the alternative, Wal–Mart requested a new trial in which McDonald's could be included on the special verdict form. The trial court denied the motion. Wal–Mart timely appealed.

### B. The ICA's opinion

On appeal, Wal–Mart argued that the trial court erred in: 1) denying Wal–Mart's motion for summary judgment as to the negligence claim; 2) dismissing McDonald's, excluding evidence regarding McDonald's liability, omitting McDonald's from the special verdict form, and refusing to set off the McDonald's settlement against the amount of the jury's verdict; 3) allowing Gump to introduce evidence of prior accidents; 4) sanctioning Wal–Mart under Rule 26 of the Hawaii Arbitration Rules; 5) sanctioning Wal–Mart for settlement conference violations; and 6) denying Wal–Mart's motion for JNOV or a new trial. The ICA affirmed the trial court on all points. In its application for certiorari, Wal–Mart does not contest issues 3, 4, and 5.

In affirming the trial court's denial of Wal–Mart's motion for summary judgment as to the negligence claim, the ICA adopted the

mode of operation rule and held that the rule relieved Gump of her burden to prove that Wal–Mart had notice of the french fry. The ICA also held that the trial court properly dismissed McDonald's from the case and excluded evidence of McDonald's liability because Wal–Mart had not asserted a cross-claim for contribution against McDonald's. In addition, the ICA held that the trial court did not abuse its discretion in refusing to include McDonald's, a non-party, on the special verdict form. The ICA also affirmed the trial court's denial of Wal–Mart's motion for JNOV or, in the alternative, a new trial.

Wal–Mart filed a timely application for certiorari on December 17, 1999.[1] Wal–Mart argues that the ICA erred in affirming the judgment against Wal–Mart where there was no proof of actual or constructive notice and no proof that Wal–Mart failed to exercise reasonable care. Wal–Mart also argues that the ICA erred in affirming the award of damages where Wal–Mart was denied the opportunity to establish McDonald's liability and/or the trial court refused to set off the McDonald's settlement against the amount of the jury's verdict against it.

## II. STANDARD OF REVIEW

■ The adoption of the mode of operation rule and establishment of the requirements of the rule are questions of law. Questions of law are reviewed *de novo* under the right/wrong standard. *Roes v. FHP, Inc.*, 91 Hawai'i 470, 473, 985 P.2d 661, 664 (1999). The trial court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed under the right/wrong standard. *Brown v. Thompson*, 91 Hawai'i 1, 8, 979 P.2d 586, 593 (1999).

[Hawai'i Rules of Civil Procedure (HRCP)] Rule 41(a)(2) provides in pertinent part that "[e]xcept [by stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the

court deems proper." HRCP Rule 41(a)(2) (emphasis added). A court's imposition of such terms and conditions would be reviewable for an abuse of discretion. *Sapp v. Wong*, 3 Haw.App. 509, 512, 654 P.2d 883, 885 (1982).

*Moniz v. Freitas*, 79 Hawai'i 495, 500, 904 P.2d 509, 514 (1995) (some alterations in original). Whether Wal–Mart was entitled to set off the McDonald's settlement under the Uniform Contribution Among Tortfeasors Act (UCATA), HRS §§ 663–11 to 663–17 (1993 & Supp.1999), is a question of statutory interpretation. Questions of statutory interpretation are questions of law reviewed *de novo*. *Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999).

## III. DISCUSSION

### A. The ICA did not err in adopting the mode of operation rule and in applying it to the present case.

■ In affirming the trial court's denial of Wal–Mart's motion for summary judgment, the ICA adopted the mode of operation rule, which it summarized as follows:

where a plaintiff is able to demonstrate that the business proprietor adopted a marketing method or mode of operation in which a dangerous condition is reasonably foreseeable and the proprietor fails to take reasonable action to discover and remove the dangerous condition, the injured party may recover without showing actual notice or constructive knowledge of the specific instrumentality of the accident.

ICA's opinion at 441–442, 5 P.3d at 431–432 (citing *Jackson v. K–Mart*, 251 Kan. 700, 840 P.2d 463, 468 (1992)). Where the dangerous condition arises through means other than those reasonably anticipated from the mode of operation, the traditional burden of proving notice remains with the plaintiff. *Id.* (citing *Jackson*, 840 P.2d at 470). Because

1. The Hawaii Restaurant Association and the Hawaii Insurers Council (HIC) filed briefs of amicus curiae on January 18 and 19, 2000, respectively. The Building Owners and Managers Association (BOMA) and the Institute of Real Estate Management filed a joint amicus brief on March 28, 2000. All argue that the ICA erred in adopting the mode of operation rule. HIC and BOMA also argue that cross-claims should not be required in order to litigate the liability of settling parties.

the commercial establishment should be aware of the potentially hazardous conditions that arise from its mode of operation, an injured plaintiff need not prove that the defendant had actual notice of the specific instrumentality causing his or her injury. Notice is imputed from the establishment's mode of operation.

We agree with the ICA that the mode of operation rule is a logical extension of the traditional rule of premises liability that we announced in *Corbett v. AOAO of Wailua Bayview Apartments*, 70 Haw. 415, 772 P.2d 693 (1989). In *Corbett*, we stated that,

if a condition exists upon the land which poses an unreasonable risk of harm to persons using the land, then the possessor of the land, if the possessor knows, or should have known of the unreasonable risk, owes a duty to the persons using the land to take reasonable steps to eliminate the unreasonable risk, or adequately to warn the users against it.

*Id.* at 417, 772 P.2d at 695. As the ICA noted, having knowingly allowed patrons to carry McDonald's food items throughout the store, realizing that some items will foreseeably be dropped, Wal–Mart had constructive notice that fallen McDonald's food could create a potential safety hazard. Therefore, an injured plaintiff should not be required to prove that Wal–Mart had actual notice of the specific instrumentality that caused his or her injury. The mode of operation rule is also consistent with the exception to the notice requirement where the dangerous condition is traceable to the defendant or its agents. ICA's opinion at 443, 5 P.3d at 433 (citing *Jackson*, 840 P.2d at 466–67).

Although we agree with the adoption of the mode of operation rule, we clarify the ICA's opinion by holding that the application of the rule is limited to circumstances such as those of this case. Wal–Mart chooses, as a marketing strategy, to lease store space to McDonald's in order to attract more customers and encourage them to remain in the store longer. Wal–Mart also chooses, for the most part, not to prevent patrons from carrying their McDonald's food into the Wal–Mart shopping area. This mode of operation gave rise to the hazard that caused Gump's injury.

Under the mode of operation rule, Gump was not required to prove that Wal–Mart had actual notice of the specific instrumentality that caused her injury. The ICA correctly affirmed the trial court's denial of Wal–Mart's motion for summary judgment on the negligence claim.

■ Wal–Mart also argues that, even if the mode of operation rule is the law in Hawai'i, the ICA erred in affirming Wal–Mart's liability under the rule because it was not supported by the evidence adduced at trial. We disagree. Fallen food is a continuous and foreseeable risk inherent in Wal–Mart's mode of operation. Further, Wal–Mart failed to take reasonable precautions to prevent the risks inherent therein. The evidence adduced at trial established that Wal–Mart had not enforced McDonald's practice of requiring that patrons not remove McDonald's food items from the restaurant. In addition, although Wall described the "zone defense" method employed by Wal–Mart, he could not state how often zone defenses were called or whether one had been called before Gump's fall. The ICA did not err in affirming the final judgment and the order denying the motion for JNOV or a new trial.

**B. The ICA did not err in affirming the dismissal of McDonald's, the exclusion of evidence regarding McDonald's liability, and the omission of McDonald's from the special verdict form, but erred in affirming the amount of the damages assessed against Wal–Mart.**

The ICA held that the trial court did not err in dismissing McDonald's from the case and in excluding evidence regarding McDonald's liability. The ICA also held that the trial court did not abuse its discretion in refusing to include McDonald's on the special verdict form. The ICA further held that Wal–Mart was not entitled to contribution from McDonald's, but it did not address whether Wal–Mart was entitled to a set off in the amount of McDonald's settlement with Gump. In its application for certiorari, Wal–Mart argues that McDonald's proportionate liability should have been litigated and that Wal–Mart was entitled to a set off.

### 1. Litigation of McDonald's liability

■ Wal–Mart argues that the ICA erred in holding that a cross-claim for contribution is a condition precedent to the apportionment of fault between a settling joint tortfeasor and a remaining joint tortfeasor. This is a misstatement of the ICA's holding. The ICA noted that if Wal–Mart had filed a cross-claim against McDonald's, the trial court could not have dismissed McDonald's from the case and the proportionate liability of the two defendants could have been determined at trial. ICA's opinion at 445, 5 P.3d at 435. However, the ICA agreed with Wal–Mart that non-parties *may* be included on a special verdict form. *Id.* at 446, 5 P.3d at 436 (citing *Kaiu v. Raymark Industries, Inc.*, 960 F.2d 806 (9th Cir.1992); *Wheelock v. Sport Kites, Inc.*, 839 F.Supp. 730 (D.Haw.1993)). The ICA's holding that the failure to file a cross-claim supported the trial court's exercise of discretion in omitting McDonald's from the special verdict form did not amount to a requirement that a cross-claim be filed.

The UCATA defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." HRS § 663–11 (1993). Joint tortfeasors "are jointly and severally liable for the injury they caused to an injured party ... and the injured party is entitled to collect his or her entire damages from either tortfeasor." *Karasawa v. TIG Ins. Co.*, 88 Hawai'i 77, 81, 961 P.2d 1171, 1175 (App.1998). HRS § 663–12 provides that:

> The right of contribution exists among joint tortfeasors.
>
> A joint tortfeasor is not entitled to a money judgment for contribution until the joint tortfeasor has by payment discharged the common liability or has paid more than the joint tortfeasor's pro rata share thereof.
>
> . . . .
>
> When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in de-termining their pro rata shares, subject to section 663–17.

HRS § 663–17(c) (1993) provides: "As among joint tortfeasors who in a single action are adjudged to be such, the last paragraph of section 663–12 applies only if the issue of proportionate fault is litigated between them by pleading in that action."

In the present case, Gump fell and sustained injuries after she slipped on a Mc-Donald's french fry that was on the floor of the Wal–Mart store. Thus, Wal–Mart, the party in control of the premises where the incident occurred, and McDonald's, the party that made and sold the french fry, are joint tortfeasors under HRS § 663–11. Wal–Mart did not file a cross-claim against McDonald's. The ICA correctly held that, based on HRS §§ 663–12 and 663–17(c), because Wal–Mart did not file a cross-claim against McDonald's, Wal–Mart did not have a right of contribution from McDonald's, and the trial court properly acted within its discretion in dismissing McDonald's from the case.

■ The ICA also correctly held that, under appropriate circumstances that did not exist in the present case, non-parties may be included on a special verdict form. Non-parties may be considered joint tortfeasors under the UCATA and, in the trial court's sound discretion, may be included on a special verdict form. "A party is liable within the meaning of section 663–11 if the injured person could have recovered damages in a direct action against that party, had the injured person chosen to pursue such an action." *Velazquez v. National Presto Indus.*, 884 F.2d 492, 495 (9th Cir.1989) (citing *Petersen v. City & County of Honolulu*, 51 Haw. 484, 485–86, 462 P.2d 1007, 1008 (1969), *as amended*, (1970); *Tamashiro v. De Gama*, 51 Haw. 74, 75, 450 P.2d 998, 1000 n. 3 (1969) (discussing predecessor to section 663–11)).

However, the circumstances of the present case are distinguishable from those of *Kaiu* and *Wheelock*, cited by Wal–Mart, in which non-parties were included on the special verdict forms. In *Kaiu*, the included non-party was not made a party to the action because of a bankruptcy stay that was effective throughout the course of proceedings. 960

F.2d at 819 n. 7. In *Wheelock*, the federal district court dismissed a defendant, Sport Kites, Inc., in order to preserve diversity jurisdiction but concluded that Sport Kites could still be included on the special verdict form. 839 F.Supp. at 734. There is further authoritative support for the inclusion of non-parties on special verdict forms. In *Nobriga v. Raybestos–Manhattan, Inc.*, 67 Haw. 157, 683 P.2d 389 (1984), the plaintiffs settled with twenty-two of the twenty-four defendants, but all twenty-four were included on the special verdict form. However, this was apparently done pursuant to the terms of the release. *Id.* at 160, 683 P.2d at 391.

We agree with the ICA that the trial court did not abuse its discretion in omitting Mc-Donald's from the special verdict form. Wal–Mart chose not to file a cross-claim against McDonald's. While there are tactical reasons to choose not to file a cross-claim, one of the risks that accompanies such a decision is the risk that McDonald's would settle, which could prevent Wal–Mart from establishing the pro rata share of fault between the two. Based upon the circumstances of Gump's settlement with Mc-Donald's, which were distinguishable from those of the cases cited *supra*, the trial court acted within its discretion in omitting Mc-Donald's from the special verdict form and preventing Wal–Mart from litigating Mc-Donald's fault because Wal–Mart had not filed a cross-claim.

### 2. Set off of the McDonald's settlement

■ In its application for certiorari, Wal–Mart argues that it was entitled to set off the amount of Gump's settlement with Mc-Donald's against the amount of the jury's verdict against it under the well established principle that a plaintiff is only entitled to one recovery. *See American Broadcasting Co. v. Kenai Air of Hawaii, Inc.*, 67 Haw. 219, 231, 686 P.2d 1, 8 (1984); *Mitchell v. Branch*, 45 Haw. 128, 141, 363 P.2d 969, 978 (1961). Wal–Mart also contends that because McDonald's was a joint tortfeasor, under HRS § 663–14 (1993),[2] McDonald's release should have decreased Gump's claim against Wal–Mart. We agree.

■ The right of contribution is separate and distinct from the right to set off. *Compare* HRS § 663–14 (Release; effect on injured person's claim) *with* HRS § 663–15 (1993) (Release; effect on right of contribution).[3] Further, we have previously stated:

> In a joint tortfeasor action the most desirable procedure is for all alleged tortfeasors to be joined in one action. As we have said: "This would ensure that a plaintiff will recover his full damages, neither more nor less...." *Loui v. Oakley*, 50 Haw. 260, 265, 438 P.2d 393 (1968). In *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), we noted that "[t]he general rule in measuring damages is 'to give a sum of money to the person wronged which as nearly as possible, will restore him to the position he would be in if the wrong had not been committed.'" 52 Haw. at 167, 472 P.2d 509. Thus, in following that principle, the Intermediate Court of Appeals in *Beerman v. Toro Manufacturing Corp.*, 1 Haw.App. 111, 615 P.2d 749 (1980), adopted the position that a party was entitled to only one satisfaction of a judgment. We think that *there should be only one recovery for compensatory damages* except where statutes otherwise provide.

*Nobriga*, 67 Haw. at 162–63, 683 P.2d at 393 (emphasis added).

---

**2.** HRS § 663–14 provides:

> A release by the injured person of joint tortfeasors or one joint tortfeasor, whether before or after judgment, shall not discharge the other tortfeasors unless the releases or release so provide; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the releases or release, or in any amount or proportion by which the releases or release provide that the total claim shall be reduced, if greater than the consideration paid.

**3.** HRS § 663–15 provides:

> A release by the injured person of one joint tortfeasor does not relieve the joint tortfeasor from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasors to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasors, of the injured person's damages recoverable against all the other tortfeasors.

In the present case, Gump is entitled to only one recovery for compensatory damages, unless the applicable statute provides otherwise. Under HRS § 663–14, the release of one joint tortfeasor "reduces the claim against the other tortfeasors in the amount of the consideration paid." Therefore, Gump's release of McDonald's in exchange for $5,000 reduced her claim against Wal–Mart by that amount by operation of law. If the jury determined that her damages were $26,500 and that she was responsible for $1,325.00, Wal–Mart should not have been obligated to pay more than $20,175. This limitation of Gump's recovery is independent of whether Wal–Mart filed a cross-claim for contribution against McDonald's. Therefore, the ICA erred in affirming the trial court's April 23, 1998 judgment[4] that stated that Wal–Mart was liable to Gump in the amount of $25,175.00.

### IV. CONCLUSION

Based on the foregoing, we reverse the ICA's opinion insofar as it affirmed the amount of damages entered against Wal–Mart. We remand the case to the trial court for entry of judgment consistent with this opinion. We affirm the ICA's opinion, as modified by our analysis, in all other respects.

---

4. We note that the ICA's opinion mistakenly states that the judgment was dated September 19, 1997.