(35 P.3d 925)

No. 86,373

LARRY HEMBREE, *Appellant*, v. WAL-MART OF KANSAS, d/b/a WAL-MART STORES, INC., *Appellee*.

Opinion filed September 28, 2001.

*Donald T. Taylor*, of Robb, Taylor & O'Connor, of Kansas City, for appellant.

*James R. Jarrow*, of Baker, Sterchi, Cowden & Rice, LLC, of Overland Park, for appellee.

Before KNUDSON, P.J., MARQUARDT, J., and WAHL, S.J.

WAHL, J.: Larry Hembree appeals the refusal of the district court to give a mode-of-operation instruction in a personal injury suit.

While walking through a Wal-Mart store in Kansas City, Kansas, carrying cat food and dog food, Hembree slipped and fell on the floor. He suffered an injury to his knee that eventually required surgery.

After falling, Hembree notified an employee of his fall. The employee directed Hembree to the customer service desk where he provided a written statement of the incident and returned home.

Hembree filed suit against Wal-Mart, alleging the store was negligent in allowing a substance to be on the floor. During jury trial, Hembree testified that although he did not see any broken bottles or containers in the area where he fell, he believed he slipped on Noxema skin cream because he is familiar with that substance's odor. He and his wife both testified they noticed a white, creamy substance on the tip of Hembree's shoe while at the hospital.

Michael Hartley, a Wal-Mart assistant manager, testified he was working the night Hembree fell. He did not speak to Hembree, but he went to the area where Hembree fell and did not see a spill. Hartley stated no employee in the store had reported seeing or cleaning up a spill that evening.

Hartley testified employees would conduct what were called safety sweeps at certain hours each day where employees would walk every aisle of the store and clean up anything that required cleaning. A safety sweep was performed at approximately 7 p.m. on the night of Hembree's fall.

Hembree requested a jury instruction allowing the jury to find Wal-Mart at fault if it determined Wal-Mart "by reason of its mode of operation, could reasonably anticipate that such hazardous conditions would regularly arise from a third party's actions." The requested instruction would not require Hembree to prove Wal-Mart had actual notice of the alleged hazardous condition. The trial court refused to give the requested instruction, and the jury found neither party to be at fault.

Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. *Haskell v. Stauffer Communications, Inc.*, 26 Kan. App. 2d 541, 542, 990 P.2d 163 (1999). Instructions are to be considered together and read as a whole. *Hawkinson v. Bennett*, 265 Kan. 564, 578, 962 P.2d 445

(1998). If the instructions fairly instruct the jury on the law governing the case and the jury could not reasonably be misled by them, the instructions will be approved on appeal. 265 Kan. at 578.

Hembree argues the trial court erred by not giving a mode-of-operation instruction based upon *Jackson v. K-Mart Corp.*, 251 Kan. 700, 840 P.2d 463 (1992). In that case, Jackson was walking down an aisle in a K-Mart department store when she slipped and fell near a clothing rack. In the middle of the tile floor near the rack was a green liquid that was apparently avocado juice. Jackson did not see the juice or know how it got there or how long it had been there. Jackson later heard a K-Mart employee say a woman had passed through the area where Jackson fell and was accompanied by a small child carrying a can of avocado juice. The store operated an in-store cafeteria and allowed customers to remove food and drink from the cafeteria and carry it onto the shopping floor. Jackson testified the cafeteria sold cans of avocado juice, although K-Mart alleged that an employee found a can of avocado juice near the location of Jackson's fall bearing a Wal-Mart label.

The district court granted summary judgment for K-Mart because Jackson did not establish that K-Mart had either actual notice of the spill or constructive notice based on the length of time the spill existed. The district court further ruled that the general rule in Kansas is that where an individual is injured as a result of a fall caused by a dangerous condition not created by the proprietor but from other persons' actions, proof is required that the proprietor knew or should have known of the condition.

This court reversed the district court and adopted the mode-of-operation rule, "which allows a customer injured due to a condition inherent in the way the store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition." 251 Kan. at 702. The case was remanded for a determination of whether the dangerous condition due to K-Mart allowing customers to carry food and drink into the shopping area was reasonably foreseeable and, if so, whether reasonable care had been exercised.

On subsequent review by the Supreme Court, the court noted that the mode-of-operation rule is part of the trend of liberalizing

the rules restricting recovery by one injured on the premises of another. 251 Kan. at 706. The court also discussed the rise of self-service marketing where customers are free to browse, examine, and select merchandise for themselves and recognized this method of shopping increases the risk of dangerous conditions being created. 251 Kan. at 707.

The mode-of-operation rule looks to a business' choice of a mode of operation and not to the events surrounding the plaintiff's accident. A third party's independent negligence is no longer the source of liability, and the plaintiff is not required to discover the third party's actions. The proof of a particular mode of operation substitutes for the traditional elements of a prima facie case. 251 Kan. at 709.

The mode-of-operation rule is a limited exception and does not abrogate general liability rules. 251 Kan. at 710. The court cited *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 400-01, 733 P.2d 283 (1987), to illustrate the rule's application.

"The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition." *Jackson*, 251 Kan. at 710.

Accordingly, a proprietor would be liable for a dangerous condition caused by a third party, absent actual or constructive notice of the condition, where, based on the mode of operation, the proprietor could reasonably foresee that the dangerous condition could regularly occur. 251 Kan. at 710.

In the present case, the district court found the mode-of-operation instruction did not fit the facts of the case and that giving the instruction would make Wal-Mart an insurer for anyone who happened to slip and fall in the store. We agree.

The mode-of-operation instruction is properly given only in cases where the evidence establishes that a company's adoption of a particular mode of operation makes it reasonably foreseeable that a dangerous condition could regularly occur. In Kansas, the rule has its most general application to self-service operations. *Kimes v.*

*Unified School Dist. No. 480,* 934 F. Supp. 1275, 1280 (D. Kan. 1996). The evidence in the present case was that on the date of the fall, Wal-Mart was the type of store where shoppers were invited to come in and pick up, carry, examine, and purchase merchandise for themselves. There was no evidence presented that Wal-Mart's mode of operation was unique or created a situation in which dangerous conditions could regularly occur.

The evidence also established that Wal-Mart had a system for checking for dangerous conditions and had implemented the system. It appears the store was making reasonable safety efforts commensurate with any risks involved in the operation of the store.

Instructing on the mode-of-operation rule in cases such as this would result in most establishments being held to a near strict liability standard. Most businesses today operate in a manner that allows customers to serve themselves to some degree. The rule is not intended to uniformly cover all self-service situations. The instructions as given to the jury in the present case accurately and fully stated the law and did not result in prejudice to any party.

Affirmed.