No. 128,836

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GARY WASHINGTON,
*Appellant*,

v.

TOPEKA RESCUE MISSION,
*Appellee*.

SYLLABUS BY THE COURT

1.

For recovery of damages in a slip and fall case in Kansas, there must be proof of injury and damages resulting from negligence.

2.

A business is not an insurer of its invitees. Therefore, in order to recover damages from a business for a slip and fall injury due to a dangerous condition existing on the business premises, there must be proof that the business knew about that dangerous condition and the business negligently failed to take reasonable steps to prevent injury.

3.

In Kansas, due to our Supreme Court's adoption of the mode-of-operation rule, if a business invites its customers into a specific area where conditions are more likely to cause a slip and fall, such as a self-service drinks bar, no specific prior notice of a particular dangerous condition is needed before the business can be held liable for negligence.

1

4.

The mode-of-operation rule applies only when the proprietor has adopted a mode of operation which makes recurring dangerous conditions reasonably foreseeable and then has failed to exercise reasonable care under the circumstances to prevent injury.

Appeal from Shawnee District Court; JAY D. BEFORT, judge. Oral argument held November 18, 2025. Opinion filed January 9, 2026. Affirmed.

*Bruce Alan Brumley* and *Chloe Elizabeth Davis*, of Topeka, for appellant.

*Michelle R. Stewart*, of Hinkle Law Firm LLC, of Lenexa, for appellee.

Before GARDNER, P.J., HILL, J., and JOAN M. LOWDON, District Judge, assigned.

HILL, J.:  Gary Washington invites us to expand the "mode-of-operation rule" followed in Kansas negligence cases so he can recover damages that he suffered from his slip and fall in the dormitory at the Topeka Rescue Mission. We decline his invitation.

*Water on a cement floor leads to a slip, a fall, injuries, and a lawsuit.*

In May 2021, Washington lived in a dormitory at the Topeka Rescue Mission. The Mission provides services, including shelter, to people experiencing homelessness. One day, Washington got out of bed around 11 a.m. to brush his teeth and use the restroom. He did not see any water on the floor when he walked to the restroom. He was only in the restroom long enough to use the facilities and brush his teeth. When he returned to the dorm, he slipped on water on the floor and fell. He did not see the water before he fell. No one reported the existence of water on the dormitory floor to the Mission before Washington fell.

After Washington fell, another resident reported that he had been baptized on May 2, 2021, and had hung up his clothes to dry afterward. The wet clothes may have caused water to be present on the dormitory floor. The Mission had no knowledge that there was water on the dormitory floor before Washington's fall. The Mission does not have nor does its staff enforce any rules, policies, or procedures for guests of the Mission regarding what the guests are to do with their wet clothing.

Washington sued the Mission, alleging the fall was caused by the Mission's negligence. The Mission moved for summary judgment because it knew nothing about the water on the dormitory floor before Washington's fall, which Washington would need to sustain a claim for negligence. Washington argued the district court should apply the mode-of-operation rule, which would make such knowledge unnecessary.

The district court granted summary judgment to the Mission. The court reasoned that, because the water on the floor was caused by another resident rather than an employee of the Mission, Washington had the burden to show the Mission had actual knowledge of the dangerous condition or the condition had existed for such length of time that the Mission should have known about it. Washington offered no evidence of either actual or constructive knowledge of the dangerous condition of water on the floor. The court declined to apply the mode-of-operation rule because Kansas courts had limited the application of such rule to self-service operations. The Mission was not a self-service operation, and the mode-of-operation rule did not apply. The court also found that in operating a shelter, the Mission was not aware of a particular risk from wet clothing.

Washington appeals that grant of summary judgment.

*We are in the same position as the district court.*

As an appellate court, we review a district court's denial of a motion for summary judgment de novo. We do, however, view the facts in the light most favorable to the party opposing summary judgment. If reasonable minds could differ about the conclusions drawn from the evidence—if there is a genuine issue about a material fact—then we will deny summary judgment. *John Doe v. M.J.*, 315 Kan. 310, 313, 508 P.3d 368 (2022).

*A review of the mode-of-operation rule is helpful at this point.*

Rules on the recovery of damages for negligence develop over time with each reported case. For recovery of damages in a slip and fall case in Kansas, there must be proof of injury and damages resulting from negligence. So, business owners who invite guests onto their premises generally have a duty to use due care to keep those premises in a reasonably safe condition. But the owner is not an insurer of all accidents that occur on the premises. *Fisher v. Sears, Roebuck & Co.*, 207 Kan. 493, 497, 485 P.2d 1309 (1971). Early Kansas Supreme Court cases divided slip and fall cases into two categories: (1) cases where an injury was caused by a dangerous condition traceable to the proprietor's own act, and (2) cases where an injury was caused by a dangerous condition traceable to persons for whom the proprietor is not responsible. In the first category of cases, the plaintiff need not prove the proprietor had notice of the dangerous condition. But in the second category of cases, the plaintiff must show the proprietor had actual notice of or that the condition existed for such a length of time that the proprietor should have known of it. *Little v. Butner*, 186 Kan. 75, 81, 348 P.2d 1022 (1960).

Kansas has adopted an exception to the notice requirement of the second category of cases called the "'mode-of-operation' rule." *Jackson v. K-Mart Corp.*, 251 Kan. 700, 709-10, 840 P.2d 463 (1992). This rule generally allows the plaintiff to recover for a slip and fall without showing the proprietor had "'actual or constructive knowledge'" of the

4

dangerous condition if "'the proprietor adopted a mode of operation where a patron's carelessness should be anticipated and the proprietor fails to use reasonable measures'" to prevent injury. 251 Kan. at 710. In Kansas, the mode of operation is a "limited exception" that "does not abrogate the general rule." 251 Kan. at 710.

> "'The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition.'" *Jackson*, 251 Kan. at 710.

The mode-of-operation rule applies only when the proprietor "adopted a mode of operation which made recurring dangerous conditions reasonably foreseeable and failed to exercise reasonable care under the circumstances." 251 Kan. 700, Syl. ¶ 4. Both the foreseeability and the exercise of reasonable care are questions of fact. See 251 Kan. at 710-11; PIK Civ. 4th 126.05. The plaintiff must come forward with evidence that the business' adoption of a particular mode of operation makes it reasonably foreseeable that a dangerous condition would regularly occur. 251 Kan. at 710; *Hembree v. Wal-Mart of Kansas*, 29 Kan. App. 2d 900, 903, 35 P.3d 925 (2001). Summary judgment is appropriate where the plaintiff fails to come forward with any evidence the defendant adopted such a particular mode of operation. *Miller v. Dollar General Corporation*, No. 22-CV-1137-JAR, 2023 WL 2967940, at *4-5 (D. Kan. 2023) (unpublished opinion) (no evidence that Dollar General encouraged or permitted customers to open sealed bottles of liquid in the store).

This mode-of-operation rule changes our focus. In Kansas, due to our Supreme Court's adoption of the mode-of-operation rule, if a business invites its customers into a specific area where conditions are more likely to cause a slip and fall, such as a self-service drinks bar, no specific prior notice of a particular dangerous condition is needed

before the business can be held liable for negligence. The focus is the mode of operation of the business, not the events surrounding the plaintiff's accident. *Jackson*, 251 Kan. at 710; *Hembree*, 29 Kan. App. 2d at 903. In *Jackson*, the mode of operation at issue was that K-Mart allowed patrons to consume food and drink on the shopping floor. 251 Kan. at 704. The plaintiff slipped and fell on some avocado juice in the children's clothing department. The court reversed the district court's grant of summary judgment and remanded for a jury to decide whether K-Mart could reasonably foresee that customers would regularly spill beverages on the floor and whether K-Mart failed to exercise reasonable care. 251 Kan. at 710-11. But the *Jackson* holding was not dependent on the self-service aspect of K-Mart's business. Although K-Mart sold avocado juice at its in-store cafeteria, the court emphasized that it was not relevant where the avocado juice was purchased. 251 Kan. at 701, 710.

Clearly, the mode-of-operation rule was created principally because the rise of self-service shopping—where customers browse and select merchandise for themselves—was thought to increase the risk of dangerous conditions being created. Customers are not as careful in handling merchandise as employees are. Customers may spill or drop merchandise and leave a mess on the floor. It was thought that by using the self-service method, the proprietor was creating a dangerous situation. 251 Kan. at 707-08; *Hembree*, 29 Kan. App. 2d at 903-04.

Some states expressly limit the mode-of-operation rule to the self-service business context. See *FGA, Inc. v. Giglio*, 128 Nev. 271, 275-76, 278 P.3d 490 (2012); *Prioleau v. Kentucky Fried Chicken, Inc.*, 223 N.J. 245, 249, 122 A.3d 328 (2015). A few states have recognized that the mode-of-operation rule is not limited to a particular type of business. See *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 260-61 (Fla. 2002) (nursing home practice of allowing residents to carry food from the dining room to their rooms precluded summary judgment); *Sarkisian v. Concept Restaurants*, *Inc.*, 471 Mass. 679, 683-85, 32 N.E.3d 854 (2015) (summary judgment inappropriate where night club

6

permitted patrons to dance while holding their beverages). However, many states have not adopted the mode-of-operation rule at all. See *Edwards v. Hy-Vee, Inc.*, 294 Neb. 237, 244-45, 883 N.W.2d 40 (2016).

We have stated the rule "has its most general application to self-service operations" but does not apply merely because the business is a self-service operation. *Hembree*, 29 Kan. App. 2d at 903-04. The *Hembree* panel warned that applying the mode-of-operation rule in all self-service situations would result in strict liability, which the courts had not intended. All modern retail stores are self-service establishments. 29 Kan. App. 2d at 904.

We agree with the *Hembree* panel's reasoning and will not extend the mode-of-operation rule to all self-service situations. We also agree with the panel in *Krom v. National Heritage, Inc.*, No. 72,504, 1995 WL 18253035, at *3 (Kan. App. 1995) (unpublished opinion), which declined to extend the mode-of-operation rule beyond the self-service and retail store context and apply the rule to a slip and fall at a nursing home.

Finally, we recognize that we are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). We see no hint of departure by our Supreme Court in its position on the mode-of-operation rule.

*The parties take opposite positions on this issue.*

Washington argues the Mission was negligent because baptisms took place and were encouraged as part of the Mission's mode of operation, the residents' carelessness with their wet clothes after the baptisms was foreseeable, and the Mission did not have a procedure in place to deal with such wet clothes. Washington acknowledges the mode-of-

7

operation rule has been limited to self-service stores. But he argues we should expand the rule to apply to all premises that are open to the public.

The Mission argues the central fact underlying Washington's claim—that the Mission performed baptisms as part of its operation—is unsupported by the record. The Mission further argues that an expansion of the narrow mode-of-operation exception would result in strict liability for any business open to the public.

*Our view of this case is similar to the district court's:  Summary judgment is proper.*

The Mission encouraging or permitting baptisms to be performed at the shelter is not a fact in the record. The record states that another resident reported that he had been baptized and hung his clothes up to dry, which may have caused water to be present on the dormitory floor. There is nothing about where the baptism was performed or who performed it. In his response to the Mission's motion for summary judgment, Washington merely argued it was foreseeable that people staying at the Mission would often be baptized because the Mission was a ministry-based shelter. Washington alleged in his statement of facts that the Mission's vision was "'to share the love of Jesus Christ.'" The Mission responded that simply because it was a faith-based organization did not make it foreseeable that those seeking shelter would be baptized.

Washington did not come forward with any evidence that the Mission had a particular mode of operation of encouraging or permitting baptisms to be performed at the shelter. We are not even sure that the water on the floor came from clothes drying after a baptism. Even if we assume that the source of the water on the dormitory floor was from a baptism, because Washington is the party opposing summary judgment, we remain unconvinced. At most Washington alleged and offered evidence that the Mission's

mode of operation was faith-based. Thus, we need not decide whether to extend the mode-of-operation rule beyond the self-service industry. Washington's claim fails as a matter of law either way.

This situation is different from *Jackson*, where it was uncontroverted that K-Mart allowed patrons to consume food and drink on the shopping floor. The particular mode of operation K-Mart had adopted permitted the negligence question to go to the jury despite K-Mart's lack of notice of the spill. 251 Kan. at 701, 709-11.

In contrast, in *Miller*, summary judgment was appropriate because there was no evidence that Dollar General encouraged or permitted customers to open sealed bottles of liquid in the store. 2023 WL 2967940, at *4-5.

We think that this case is more like *Miller*. To survive summary judgment, Washington needed to allege and offer evidence that the Mission encouraged or permitted baptisms to be performed at the shelter. The mode-of-operation rule can only be invoked when a business has chosen a particular mode of operating its business that makes it reasonably foreseeable a dangerous condition would regularly occur. *Jackson*, 251 Kan. at 710. The particular mode of operation substitutes for the traditional element of notice in a negligence case. See 251 Kan. at 709-10. Here, the Mission moved for summary judgment because it had no notice of the water on the dormitory floor. In response, Washington invoked the mode-of-operation rule. But without any evidence of a particular mode of operation adopted by the Mission, the mode-of-operation rule is inapplicable. Summary judgment was appropriate.

We must reject Washington's argument that the mode-of-operation rule should apply to all premises that are open to the public. The rule would not be "'of limited application'" if it applied to all premises open to the public, as Washington urges. See 251

Kan. at 710. There is no indication the Kansas Supreme Court intended the rule to be applied so broadly.

Affirmed.