No. 43,994

Katherine O. Magness, *Appellant*, v. Sidmans Restaurants, Inc., a Kansas Corporation, *Appellee*.

(402 P. 2d 767)

Opinion filed June 12, 1965.

*A. D. Weiskirch*, of Wichita, argued the cause and was on the briefs for appellant.

*Alvin D. Herrington*, of Wichita, argued the cause, and *William Tinker, Arthur W. Skaer, Hugh P. Quinn, Richard T. Foster* and *Lee H. Woodard*, all of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: This was an action to recover damages for personal injuries. At the conclusion of plaintiff's evidence, the district court sustained defendant's motion for a directed verdict and entered judgment for the defendant. The plaintiff has appealed.

The plaintiff, a 41-year-old housewife, resided in Wichita. The defendant, a Kansas corporation, operated a cafeteria-type restaurant at 1601 East Douglas, Wichita, under the name of South Seas. The restaurant was open to the public and patrons served food to themselves and carried it to the tables for consumption.

The following is a summary of the testimony of the plaintiff and her husband. On June 19, 1962, plaintiff and her husband arrived at the restaurant for dinner at approximately 7:30 p. m. Each took a plate and proceeded along the food line toward the south, helping themselves to the food. The plaintiff proceeded down the west aisle while her husband proceeded down the east asile. She partially served herself and observed there were only a few pieces of fried chicken, and was advised by a hostess at the food line "there is some on the way out now." They waited a little while, and her husband then asked if she would mind if he went ahead and sat down. He then went into the dining area and sat down at a table. By this

time, other people in the food line ahead of them had served themselves and had taken two tables to the northwest of the table where plaintiff's husband was sitting. The plaintiff waited at the south end of the food line for some four or five minutes. She then helped herself to the fried chicken which had arrived, and proceeded toward the table where her husband was sitting. This table was located in front of or to the north of a post which was six or eight feet from where the plaintiff left the food line and directly west of the south end of the bamboo partition. There was a tile floor from the bamboo partition to the table, and the restaurant was dimly lighted.

Upon leaving the food line, plaintiff proceeded along the same route as her husband except he had gone behind the post to the west side of the table and she proceeded directly to the east side of the table. At the time, plaintiff was carrying her dinner plate in her right hand, a salad plate in her left hand and had her purse over her right arm. She was holding the plates in a "normal position" and was walking toward the table where she was going to sit. When the plaintiff got approximately halfway to the table she slipped on a pickle and twisted and almost went down. As she slipped, the assistant manager grabbed her by the arm and "held the upper part of her body secure while the lower portion was twisting and sliding." The plaintiff did not know where the assistant manager was standing prior to the time she slipped and did not see him on her way to the table. Despite her near fall and the fact that the assistant manager grabbed her by the arm, she "did not spill any of the food off the plates she was carrying." On his way to the table the plaintiff's husband did not see a pickle.

After the plaintiff slipped, the assistant manager picked up a pickle from the floor and put it in a container and told a bus boy to clean up the pickle juice. There was nothing else on the floor. After the mashed pickle and juice had been cleaned up, the plaintiff sat down at the table with her husband and they started to eat their dinner. While eating, the plaintiff's husband wanted more water. He held up his glass but received no response from the waitresses. There were three waitresses sitting in the back of the restaurant and the waitress who had waited upon him and his wife was in the front of the restaurant polishing some chrome. He went to the front of the restaurant and requested some water. The assistant manager told him, "you will have to excuse us, we are having help trouble, they are quarreling among themselves." Plain-

tiff's husband testified that "the little waitress that waited on us did good," and that when he indicated his water glass was empty, she was at the front of the restaurant "shining on some chrome." There was no testimony as to what the other waitresses were doing when the plaintiff slipped, or prior thereto. After they finished eating, the plaintiff and her husband left without anything further being said.

The district court announced the following reasons for sustaining the defendant's motion for a directed verdict:

"1. That there is no evidence upon which a jury could find that the defendant, its agents, servants or employees had actual knowledge of the pickle on the floor.

"2. That there is no evidence upon which a jury could find that the pickle had been on the floor for such a length of time that in the exercise of reasonable care the defendant, its agents or employees should have known of it.

"3. That there is no evidence that this defendant did not use due care to keep in a reasonably safe condition those portions of its premises where the guests or customers may be expected to come and go and this court finds that this defendant did use due care to keep such premises in a reasonably safe condition for the guests and customers."

In seeking reversal, the plaintiff contends she was a business invitee when she entered defendant's cafeteria, helped herself to food and started to walk to a table in the dining area; that she had every right to assume the floor was suitable and safe to walk upon and that she could carry out her purpose without injury to herself, but she slipped on a pickle that had been carelessly left on the floor in a path she necessarily took to go to the table to eat. She further contends that, as an invitee, the defendant was bound to use due care to protect her from injury, not only from defects in the premises but also from other dangers arising from the use of the premises by its servants and invitees. She further contends that the defendant knew or should have known that in its self-service type restaurant, servants and patrons were going to spill or drop food on the floor used as a passageway to dining areas, and that dangerous conditions negligently created or maintained by the defendant or its agents are traceable to the defendant's acts and omissions, and proof of notice becomes unnecessary.

It is the duty of a proprietor in the control of his business to use due care to keep those portions of the premises where guests or customers may be expected to come and go, in a reasonable safe condition, and he is liable to those who without their own fault are injured by his failure to do so. The true ground for liability is his superior knowledge over that of business invitees of any dangerous

condition and his failure to give warning of the risk. However, he is not an insurer against all accidents which may befall them upon the premises. (*Little v. Butner,* 186 Kan. 75, 80, 348 P. 2d 1022, and cases cited.)

The plaintiff alleged that the defendant negligently failed to take precautions to keep the restaurant floor free from slippery substances that might cause invitees to slip thereon; that it maintained its floor in a slippery condition which was dangerous to walk upon. The other allegation of negligence was that defendant, its agents, servants, and employees, failed to keep a vigilant lookout for slippery substances on the floor and to reasonably warn plaintiff of the presence thereof when it knew or should have known by the exercise of reasonable care that persons would spill and drop foods on the floor where invitees, and particularly plaintiff, would walk when going to a table to eat.

In *Little v. Butner,* supra, it was said:

". . . With respect to the necessity of proof that the proprietor of a store in which the plaintiff was injured in a fall on an interior floor had notice of the dangerous condition, the cases are divided into two classes: (1) injuries to customers caused by dangerous conditions negligently created or maintained by the proprietor or his servants (*Reese v. Abels,* supra; *Bury v. Woolworth Co.,* 129 Kan. 514, 283 Pac. 917; *Trimble v. Spears,* 182 Kan. 406, 413, 320 P. 2d 1029; *J. C. Penney, Inc. v. Kellermeyer,* 107 Ind. App. 253, 19 NE 2d 882, 22 NE 2d 899; *Brown v. Slack,* 159 Nebr. 142, 65 NW 2d 382; *Kroger Grocery & Baking Co. v. Diebold,* 276 Ky. 349, 124 SW 2d 505), and (2) injuries due to dangerous conditions coming about through no active fault of the proprietor and not involving an instrumentality employed by him in the conduct of his business (*Relahan v. F. W. Woolworth Co.,* supra; *Glenn v. Montgomery Ward & Co.,* supra). Under the former, the condition is one which is traceable to the proprietor's own act, that is, a condition created by him or under his authority, or is one in which he is shown to have taken action, and proof of notice is unnecessary. *Under the latter, where the floor has been made dangerous by the presence of an obstacle which is traceable to persons for whom the proprietor is not responsible, absent a condition created by himself, proof that the proprietor was negligent with respect to the floor condition requires a showing that he had actual notice thereof, or that the condition existed for such a length of time that in the exercise of reasonable care he should have known of it* (Anno: 61 A. L. R. 2d pp. 124, 125 and 62 A. L. R. 2d, p. 31). (Emphasis supplied.) (l. c. 81.)

We have carefully examined the record and find no evidence introduced by the plaintiff which tended to prove that the defendant failed to exercise reasonable care to keep its floor free from slippery substances, or that it failed to perform any practice or take

any precautions which it or a similar place of business should reasonably take or perform, such as regular sweeping and cleaning of its floors, or that the defendant failed to use reasonable care for the safety of its invitees. Moreover, there is no evidence which tended to prove that the defendant or its agents or servants dropped the pickle on the floor, or, for that matter, how the pickle came to be on the floor. The plaintiff argues that a jury could find the pickle was on the floor "for a minimum of four to five minutes before plaintiff slipped on it." There was no evidence bearing upon the issue of how long the pickle was on the floor, and we think a jury could not determine whether the pickle was on the floor for such a length of time that the defendant, its agents or servants, should have known it was there. The mere fact that the plaintiff stood at the south end of the food line for four or five minutes does not establish or tend to establish or infer how or when the pickle got on the floor. Obviously, it only established how long the plaintiff stood in a certain place.

The record has been carefully reviewed and it cannot be said that, under the facts and circumstances, the defendant could be charged with constructive knowledge of the pickle on the floor, and the district court did not err in its ruling.

The judgment is affirmed.

WERTZ, J., dissents.