NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11923

LINDA S. BOWERS  vs.  P. WILE'S, INC.[1]


Middlesex.     January 7, 2016. - July 28, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[2]


Negligence, Retailer.  Practice, Civil, Summary judgment.



Civil action commenced in the Superior Court Department on
February 24, 2012.

The case was heard by Paul D. Wilson, J. on a motion for
summary judgment, and a motion to vacate judgment was also heard
by him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Joseph T. Black for the defendant.
David McCormack for the plaintiff.

The following submitted briefs for amici curiae:
William P. Mekrut for Massachusetts Defense Lawyers'
Association.
Carol A. Kelly for Property Casualty Insurers Association

---

[1] Doing business as Agway of Cape Cod.

[2] Justice Duffly participated in the deliberation on this
case and authored this opinion prior to her retirement.

of America.

Annette Gonthier Kiely, Michael C. Najjar, Tomas R. Murphy, & Elizabeth N. Mulvey for Massachusetts Academy of Trial Attorneys.

DUFFLY, J.   In this case we are called upon to determine whether the "mode of operation" approach to premises liability, see Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 683 (2015) (Sarkisian), and Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 788 (2007) (Sheehan), is applicable with respect to the operation of a garden store.  The plaintiff, Linda Bowers, suffered a displaced fracture of her right hip after she slipped and fell on a walkway leading into a Cape Cod garden store owned by the defendant, P. Wile's, Inc., doing business as Agway of Cape Cod (Agway).  Agway maintains what the parties refer to as a "gravel area" near the concrete walkway leading into the store, where landscaping items are displayed for sale. Customers may enter the gravel area, which consists of small stones less than one inch in diameter,[3] and shop for products displayed there without assistance from any Agway employee.

After she fell on Agway's premises, Bowers filed a complaint in the Superior Court asserting that she tripped on a stone that had migrated from the gravel area to the walkway, and that Agway knew that the movement of the stones from the gravel

_____

[3] The parties stipulate that these stones are "river stones," and are roughly three-fourths of an inch in size; "river stone" is not otherwise described.

area created a risk of tripping on the walkway, but failed to take reasonable steps to mitigate that risk.  Agway moved for summary judgment, arguing that, under the traditional theory of premises liability, where a foreign object is temporarily on a defendant's premises, Bowers would be required to prove Agway's actual or constructive notice of the presence of the stone on the walkway, which she concedes she is unable to do, because she does not know how the stone came to be on the walkway, nor how long it had been there when she tripped and fell.  See Sheehan, 448 Mass. at 782-783, citing Restatement (Second) of Torts § 343 (1965).

Bowers argued that, notwithstanding an inability to prevail under a traditional theory of premises liability, she could prevail by applying a mode of operation analysis.  Bowers contends that, under this approach, she could establish that Agway had notice that the stone was present because Agway uses a self-service gravel area as part of its daily operation, and was aware that customers walking in the area to pick up items for purchase might dislodge stones onto the walkway.[4]  See Sheehan, supra.

Concluding that the mode of operation approach is not

---

[4] A self-service operation is one characterized by customers being permitted to take products for sale from displays without employee assistance.  See Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 682 (2015) (Sarkisian); Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 784-786 (2007) (Sheehan).

applicable in these circumstances, a Superior Court judge granted Agway's motion for summary judgment. In a divided opinion, the Appeals Court reversed. See Bowers v. P. Wile's, Inc., 87 Mass. App. Ct. 362, 363 (2015). We allowed Agway's motion for further appellate review, and conclude that the mode of operation analysis is applicable in the circumstances here.[5]

1. Background. We recite the undisputed facts from the summary judgment record, viewed in the light most favorable to the nonmoving party. See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 318 (2012); Mammone v. President & Fellows of Harvard College, 446 Mass. 657, 659-660 (2006). On a December afternoon in 2011, Bowers went to one of Agway's garden stores on Cape Cod to shop. She approached the store on a walkway that runs between the parking lot and the store. The six-foot wide gravel area, made up of "river stones," is adjacent to this walkway. Agway displays landscaping merchandise for sale in this area, and customers may help themselves to products there.[6]

---

[5] We acknowledge the amicus briefs submitted by the Massachusetts Academy of Trial Attorneys, the Property Casualty Insurers Association of America, and the Massachusetts Defense Lawyers' Association.

[6] The dissent describes the gravel area as a walkway that customers may use "to enter the self-service area of the store," and concludes that "customers' ability to help themselves to goods . . . did not factor into the condition at issue here." Post at    . But, as Agway concedes, and as the judge found, the gravel area is not a walkway leading to a separate self-service area. Rather, as deposition testimony and photographic

While walking on the walkway adjacent to the gravel area, Bowers tripped on one of the stones that apparently had migrated onto the walkway; she did not see the stone before she fell. As a result of the fall, Bowers suffered a displaced fracture of her right hip that required two surgical repairs. Immediately after Bowers fell, an Agway employee, who had come outside to assist her, kicked several stones from the walkway into the gravel area.

Agway had installed the gravel area as part of its installation of a porch addition to the front of the garden store. Although Agway considered planting grass in this area, it instead chose to use gravel. The gravel area had been in place for fifteen years without any previous complaints of a customer having fallen due to the presence of the stones. Nonetheless, prior to Bowers' fall, Agway was aware that stones could be dislodged by people walking in the gravel area, and could end up on the walkway, creating a potential tripping hazard.[7] As a result, Agway had developed a practice of having

exhibits establish, the gravel area is in fact a self-service area in which Agway displays items for sale, and which customers may enter to select items for purchase without employee assistance. The items that Agway displays in the gravel area include pottery, shovels, rakes, soil, and mulch, as well as plants in small containers.

[7] A store manager testified during her deposition that there was a "general consensus" to keep an eye on the gravel area in part because the stones could "create a tripping hazard."

employees inspect the walkway to make sure that it was free of stones. The practice was informal, and there was no set schedule under which employees were to check the walkway. Rather, employees would check the walkway throughout the day, as they went outside to assist customers, or for other reasons during the course of their work.

2. Discussion. We review a decision on a motion for summary judgment de novo. See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. at 318. Summary judgment for the defendant is not appropriate if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff [as the nonmoving party]" (citation omitted). Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). Ordinarily, questions of negligence are for the trier of fact; only when no rational view of the evidence would warrant a finding of negligence is the question appropriate for summary judgment. See Petrell v. Shaw, 453 Mass. 377, 381 (2009).

A business owes a "duty to a paying patron to use reasonable care to prevent injury to him by third persons," Sweenor v. 162 State St., Inc., 361 Mass. 524, 526 (1972), and "to keep [its] premises in a reasonably safe condition for [its] visitors' use." Jaillet v. Godfried Home Bakeries, Inc., 354 Mass. 267, 268 (1968), quoting LeBlanc v. Atlantic Bldg. &

Supply Co., 323 Mass. 702, 705 (1949). To find a retail store liable for a plaintiff's injuries incurred as a result of a dangerous condition on the premises not caused or created by the store, a jury must find that the store (1) knew of, or, by exercise of reasonable care would have discovered, the dangerous condition; (2) the condition created an unreasonable risk of harm; (3) the store could not have expected the plaintiff to discover or protect herself against the potential harm; and (4) the store failed to exercise reasonable care to protect the plaintiff. See Deagle v. Great Atl. & Pac. Tea Co., 343 Mass. 263, 264-265 (1961).

Here, it is undisputed that Agway owns the walkway on which Bowers fell, and owed her a duty of "reasonable care" with respect to its condition. See Papadopoulos v. Target Corp., 457 Mass. 368, 372 (2010). This case revolves around the extent to which Agway had notice of a potentially hazardous, temporary condition created by a stone that had migrated to the walkway. See Sarkisian, 471 Mass. at 684.

Under the traditional approach to premises liability, a plaintiff can establish that a business had actual or constructive notice of a temporary hazard. Constructive notice can be established by evidence indicating the length of time the hazard was on the walkway. See Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 166 (1973). Using this analysis,

8

Bowers would be required to establish notice by showing that Agway (1) put the stone on the walkway, (2) knew it was on the walkway, or (3) had constructive knowledge that the stone was on the walkway because such notice could be established where, based on the length of time the stone had been on the walkway, Agway should have discovered it.  See id.

Bowers does not assert that Agway placed the stone on the walkway.  She also does not suggest that she has any knowledge of how long the stone was on the walkway.  Accordingly, under the traditional theory of premises liability, Bowers cannot establish Agway's actual or constructive knowledge of the presence of the stone on the walkway, because she cannot show that Agway had sufficient time to become aware of and remedy the condition.  See Gallagher v. Stop & Shop, Inc., 332 Mass. 560, 563 (1955).  Bowers argues, however, that her claim should be viewed under the mode of operation approach, and that, under such an approach, summary judgment should not have been granted.

a.  Scope of mode of operation approach.  The mode of operation approach recognizes that a proprietor's manner of operation can create foreseeable hazards that might arise through the actions of third parties, thus obligating the proprietor to take all reasonable precautions necessary to

protect against those foreseeable hazards.[8]  Sheehan, 448 Mass.
at 786.  Under this analysis, a plaintiff may survive a motion
for summary judgment by establishing that a business reasonably
should have anticipated that "its chosen method of operation
[would] regularly invite third-party interference resulting in
the creation of unsafe conditions," and that the plaintiff was
injured "after encountering the condition so created."
Sarkisian, 471 Mass. at 684, citing Sheehan, supra at 791.
Whether an entity's mode of operation makes a dangerous
condition reasonably foreseeable ordinarily is a question for
the finder of fact.  See Massachusetts Superior Court Civil
Practice Jury Instructions § 2.3.8 (Mass. Cont. Legal Educ. 3d
ed. 2014).

The mode of operation approach "removes the burden on the
victim of a slip and fall to prove that the owner or the owner's
employees had actual or constructive notice of the dangerous
condition or to prove the exact failure that caused the
accident."  Sheehan, supra at 790.  Instead, a "plaintiff
satisfies the notice requirement if he establishes that an
injury was attributable to a reasonably foreseeable dangerous

---

[8] See Hetzel v. Jewel Cos., 457 F.2d 527, 530 (7th Cir.
1972), cited in Sheehan, 448 Mass. at 789 ("We believe that
proof of constructive notice to a possessor of land of the
existence of a dangerous condition is properly accomplished
where it is shown that the specific condition at issue, though
transitory, is a part of a known and continuing or recurrent
condition").

condition on the owner's premises that is related to the owner's . . . mode of operation." Id. at 786. Cf. Jackson v. K-Mart Corp., 251 Kan. 700, 702, 709 (1992) (mode of operation approach "looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident," and permits customer to recover for injuries "due to a condition inherent in the way the store is operated" [citation omitted]). The approach developed as a means of addressing cases in which an entity's manner of operating its business makes the regular occurrence of dangerous conditions caused by customer action reasonably foreseeable, but where an injured customer often would be unable to obtain relief for an injury stemming from such foreseeable conditions under traditional premises liability, which requires "notice of the specific dangerous condition itself and not . . . general notice of conditions producing the dangerous condition." See Chiara v. Fry's Food Stores of Ariz. Inc., 152 Ariz. 398, 400 (1987) ("person injured in a supermarket will rarely be able to trace the origins of the accident").

The mode of operation approach is based on the theory that customers interacting with products for sale, without the assistance of store employees,

> "generally may not be as careful and vigilant as a store
> owner because customers are not focused on the owner's
> concern of keeping items off the floor to avoid potential

foreseeable risks of harm to other patrons. . . . [I]t [would be] 'unjust to saddle the plaintiff with the burden of isolating the precise failure' that caused an injury, particularly where a plaintiff's injury results from a foreseeable risk of harm stemming from an owner's mode of operation."

Sheehan, 448 Mass. at 784-785, 788. In such circumstances, a store "owner has scarce incentive to act reasonably, because the injured patron will seldom be able to discern the origin of the unsafe condition and, thus, satisfy the notice requirement under the traditional approach to premises liability." Sarkisian, 471 Mass. at 686. See Golba v. Kohl's Dep't Store, Inc., 585 N.E.2d 14, 15 (Ind. Ct. App. 1992). Therefore, where the manner of operation of a business creates a reasonably foreseeable risk of a hazardous condition, the approach permits a plaintiff to recover for injuries resulting from such conditions if the plaintiff establishes that the business did not take all "adequate steps" reasonably necessary under the circumstances to protect patrons against that risk. Sheehan, supra at 790. See Sarkisian, supra at 687. Cf. Jackson v. K-Mart Corp., 251 Kan. at 710-711.

We have emphasized that the mode of operation approach "does not make the owner of a self-service . . . store an insurer against all accidents." See Sheehan, 448 Mass. at 790. The approach does not eliminate the other elements of premises liability; a plaintiff is "still required to prove that the

defendant failed to take reasonable measures commensurate with the risks involved . . . to prevent injury" and "that the defendant acted unreasonably" in the circumstances.  Id. at 786-787.  Indeed, "nearly every business enterprise produces some risk of customer interference," and, in the absence of limiting principles, "[a] plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivabl[y] produced the hazardous condition."  Chiara v. Fry's Food Stores of Ariz., Inc., 152 Ariz. at 400-401.

Accordingly, we have required a plaintiff to establish a "particular" mode of operation that makes the hazardous condition foreseeable,[9] and a "recurring feature of the mode of operation," rather than one where the risk only "conceivabl[y]" could arise from the mode of operation.  See Sarkisian, 471 Mass. at 684, 687.  See also Chiara v. Fry's Food Stores of Ariz., 152 Ariz. at 401; Jackson v. K-Mart Corp., 251 Kan. at 710 (mode of operation approach applies only if commercial entity "could reasonably foresee that the dangerous condition

_____

[9] Cf. Jasko v. F.W. Woolworth Co., 177 Colo. 418, 420 (1972) ("practice of extensive selling of slices of pizza on waxed paper to customers who consume it while standing creates the reasonable probability that food will drop to the floor"); Fisher v. Big Y Foods, Inc., 298 Conn. 414, 426-427 (2010) (approach triggered by "showing that a more specific method of operation within a self-service retail environment gave rise" to hazardous condition); Pimentel v. Roundup Co., 100 Wash. 2d 39, 49-50 (1983) (approach applies "if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable").

would regularly occur").  In addition, as noted, even where a plaintiff is able to prove notice through a defendant's mode of operation that a dangerous condition was reasonably foreseeable, that alone does not establish liability.  A plaintiff still must establish that the steps the defendant took to protect customers from the condition that resulted in the injury were unreasonable in the circumstances.  See Sarkisian, supra at 683-684.

b.  Bowers's mode of operations claim.  To succeed in her mode of operation claim, Bowers has the burden to establish that (1) the risk that customers would dislodge stones from the gravel area onto the walkway was reasonably foreseeable; (2) it was reasonably foreseeable that stones lying on the walkway would present a tripping hazard to customers walking on the walkway adjacent to the gravel area; and (3) the steps Agway took to protect customers from the potential hazard of tripping on the stones were unreasonable.  Viewed in the light most favorable to Bowers, she has established a genuine question of material fact with respect to each of these issues.

Based on the summary judgment record, there is a disputed question of fact whether Agway's choice of gravel rather than another, nonmobile surface, such as the grass it had considered for its self-service area, which is adjacent to the walkway leading to the main entrance to the store, represents a "particular" mode of operation of the self-service area that

makes the reoccurring hazard of stones on the walkway, after customers have walked through the self-service area, foreseeable.[10] The store manager testified at deposition that Agway maintained an informal policy of having employees check the walkway whenever an employee was outside assisting a customer in the gravel area, or performing other work, approximately every fifteen minutes, at least in part due to concerns that stones might come to rest on the walkway as a result of customers walking in and around the gravel area.[11] Thus, there is a genuine question of material fact whether the risk of dislodged stones from customers walking in the gravel area in order to look at and select items for purchase was not just a "conceivable" risk, but, rather, a recurring risk created by Agway's mode of operation. See Sarkisian, 471 Mass. at 684, 687 (deposition testimony of nightclub manager that "spills on the dance floor are part of the business"). Cf. Chiara v. Fry's

---

[10] In a case in which a customer in a home improvement store was injured by a paint can that fell onto her foot from a display of stacked paint cans, for instance, the Washington State Supreme Court concluded that a mode of operation analysis was applicable, because the stacked paint cans overhung the display shelf, and the plaintiff's expert testified at deposition that the manner in which the can that fell on the plaintiff's foot had been stacked would have made it "extremely unstable" to the point where "the slightest vibration might overbalance it." See Pimentel v. Roundup Co., 100 Wash. 2d at 41, 49-50.

[11] As noted, it is undisputed that an Agway employee observed several stones on the walkway when he went to Bowers' aid after she fell.

Food Stores of Ariz., Inc., supra at 401; Fisher v. Big Y Foods, Inc., 298 Conn. 414, 426-427 (2010).

If a jury were to conclude that Agway's maintenance of the gravel area was a mode of operation that created a foreseeable risk that customers would dislodge stones onto the walkway, which, according to its manager, Agway viewed as a potential tripping hazard, there would be a further question of material fact whether Agway's efforts to protect customers from the presence of stones on the walkway were reasonable in the circumstances. The jury then would have to determine whether Agway's policy of informal but periodic inspection of the walkway by employees, approximately every fifteen minutes, was a reasonable means by which to protect customers from the risk created by the migrating stones.[12] See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991).

3. Conclusion. The judgment in favor of the defendant is vacated and set aside, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

[12] Bowers asserts also that, even if the periodic inspection was reasonable, the record would support a conclusion that the policy was not followed on the day of her injury. If so, that question would be for the fact finder on remand.

CORDY, J. (dissenting). I disagree with what I believe is an overly broad expansion of the heretofore narrowly applicable mode of operation approach to premises liability. Because the defendant's chosen method of operation -- a "gravel area" located adjacent to an outdoor self-service portico[1] -- does not regularly invite third-party interference in any way previously recognized by this court as an exception to traditional premises liability, and because I agree with the court that the plaintiff's claim fails under the traditional approach, ante at , I respectfully dissent. In my opinion, the order allowing the motion for summary judgment should be affirmed.

Massachusetts has "[h]istorically . . . followed the traditional approach governing premises liability." Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780, 783 (2007). Under that approach, a store owner is required to maintain his or her property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" (citation omitted). Id. at 783-784. "[T]he law has afforded

---

[1] What items were for sale at the self-service section of the portico on the day on which the defendant fell is not clear from the record. The plaintiff testified that, before her fall, she was distracted by a bird bath. The photograph that is part of the record displays large stone and clay bird baths. While not necessary to my conclusion, I note only that heavy objects such as bird baths, though seemingly part of a self-service operation, are not properly characterized as self-service items if employer assistance is required in their purchase.

store owners a reasonable opportunity to discover and correct any hazards before liability attaches." Id. at 784. We have thus held that, unless an exception to the general rule applies, "premises liability attaches only if a store owner has actual or constructive notice of the existence of the dangerous condition, sufficient to allow time for the owner to remedy the condition." Id.

In Sheehan, we adopted one such exception, the "mode of operation" approach to premises liability, id. at 788, subsequently expanded in Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 684-685 (2015), applicable "to situations where a business should reasonably anticipate that its chosen method of operation will regularly invite third-party interference resulting in the creation of unsafe conditions, and a visitor suffers an injury after encountering the condition so created." Rather than supplanting the traditional approach entirely, the mode of operation approach was adopted to "refine[] the Restatement's notice requirement in a narrow subset of premises liability cases," only applying under "circumstances in which strict application of the traditional approach's notice requirement [would] produce unjust results." Id. at 682-683.

The exception was intended to be narrow because, as we have observed in the past, "'nearly every business enterprise produces some risk of customer interference,' and, in the absence of

limiting principles, '[a] plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition." Id. at 684, quoting Chiara v. Fry's Food Stores of Ariz., Inc., 152 Ariz. 398, 400-401 (1987). As a result, Massachusetts courts have routinely applied two limiting principles in considering whether to subject a given case to the mode of operation approach, both of which dictate a dismissal in the present case.

First, Massachusetts courts have, until now, applied the mode of operation approach exclusively in "spillage and breakage" cases, and those in which a customer is injured by a product or item either for sale on the premises or contemplated to be carried around the business. See, e.g., Sarkisian, 471 Mass. at 682 (spilled drinks); Sheehan, 448 Mass. at 781-782 (spilled grape). The hallmark of our mode of operation approach is that customers interacting with products for sale "may not be as careful and vigilant as a store owner." Sheehan, supra at 784-785. Implicit in that concept is the assumption that business owners, by virtue of their method of operation, should be liable when their customers are negligent in relation to the products that were traditionally only handled by store owners and store employees. See id. at 784 (store owners are "thus require[d] . . . to use a degree of care commensurate with the risks involved"). This distinction is a practical one; an employer

should not be expected reasonably to detect or protect against the spillage of products not for sale or intended to be picked up and carried by third parties.

Indeed, all of the cases cited by the court (as well as those on which we relied in adopting the mode of operation approach in Sheehan) concern injuries that stemmed from items that the purveyor invited and intended third parties to pick up and carry around the establishment, resulting in an injury when third parties caused such items to spill or break. Such a limitation ensures, as we have emphasized, that the mode of operation approach, otherwise allowing the substitution of reasonable anticipation in lieu of traditional premises liability's notice requirement, "does not make the owner of a self-service . . . store an insurer against all accidents." Id. at 790. In contrast to those cases, the object on which the plaintiff was injured in the present case was not offered for sale by the defendant, nor could it have rationally been contemplated as something that would be carried around by third parties.

Second, an injured plaintiff is required to demonstrate a causal nexus between the defendant's method of operation and the dangerous condition that allegedly led to his or her injury. See, e.g., Sarkisian, 471 Mass. at 684, 687; Sheehan, 448 Mass. at 781-782, 786 (mode of operations approach's application

limited to "reasonably foreseeable dangerous condition[s] on the owner's premise that [are] related to the owner's self-service mode of operation" [emphasis added]). See also Curet v. Walgreens Co., 85 Mass. App. Ct. 1119 (2014). The object causing the injury must not only be one that the business owner invited the customer to carry around the store, but also be on the premises because of the business owner's self-service operation.

The fact that the defendant's customers were allowed to use the gravel strip in question to enter the self-service area of the store does not turn this case into a mode of operation inquiry akin to anything any appellate court in Massachusetts, or anywhere else in the country, has deemed appropriate for a mode of operation inquiry. The customers' ability to help themselves to goods, as opposed to being assisted by store employees, did not factor into the condition at issue here. See Tavernese v. Shaw's Supermkts., Inc., 72 Mass. App. Ct. 1107 (2008). Indeed, "there was simply no evidence that the presence of [the river stone] on the [sidewalk] was in any way connected to [the defendant's] self-service mode of operation." Curet, supra.

My concern is that the court's expansion of the mode of operation approach to include claims like that in the present case unnecessarily widens the scope of liability for business owners without any reasonable opportunity to discover and correct potentially dangerous conditions. The defendant was not inviting

third parties to interact with the gravel area in question in any way other than as a potential ingress and egress to and from the portico.  Put another way, had the exterior design of the defendant's store been the exact same, absent any products displayed outside, an injury caused by a meandering river stone absolutely would be considered under our traditional premises liability jurisprudence.  See, e.g., Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 166 (1973).

The court's holding ostensibly opens up any architectural decision made by self-service retail store owners to an application of the mode of operation approach:  If a customer is injured in the parking lot of a self-service establishment, was the type of cement used part of the property owner's method of operation?  If a customer of a supermarket trips on exposed linoleum flooring, is the surface part of the property owner's method of operation?  In my opinion, the traditional premises liability test remains the accepted jurisprudence for determining such disputes, even for self-service retailers, except under narrow circumstances not present in this case.  See, e.g., Jasko v. F.W. Woolworth Co., 177 Colo. 418, 420 (1972) (approach not triggered by self-service alone, but by specific "method of sale":  "practice of extensive selling of slices of pizza on waxed paper to customers who consume it while standing creates the reasonable probability that food will drop to the floor");

<u>Fisher</u> v. <u>Big Y Foods, Inc</u>., 298 Conn. 414, 426-427 (2010) (concluding that mode of operations approach is not triggered by self-service alone but rather by "[an] additional showing that a more specific method of operation <u>within</u> a self-service retail environment gave rise" to dangerous condition); <u>Pimentel</u> v. <u>Roundup Co</u>., 100 Wash. 2d 39, 49-50 (1983) (declining to adopt rule that notice requirement is eliminated as matter of law for self-service establishments, while concluding approach applies only "if the particular self-service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable"). The court's holding substantially and unrecognizably expands our limited exception from traditional premises liability, such that the exception threatens to swallow the rule entirely.

For the foregoing reasons, I conclude that the grant of summary judgment to the defendant here was warranted. See <u>Mullins</u> v. <u>Pine Manor College</u>, 389 Mass. 47, 56 (1983).